ZERBST, Warden U. S. Penitentiary, v. LYMAN.

(Circuit Court of Appeals, Fifth Circuit. February 10, 1919.)

No. 3278.

1. CRIMINAL LAW ☞1216(2)—SENTENCE—SUCCESSIVE OR CONCURRENT TERMS.
   Where a convicted defendant was committed for imprisonment for a stated term on designation by the Attorney General to a prison in which he was at the time serving a sentence from another court, from the time the warden received the commitment the sentences ran concurrently.

2. CRIMINAL LAW ☞1216(2)—SENTENCE—SUCCESSIVE OR CONCURRENT TERMS.
   Ordinarily two or more sentences run concurrently, in the absence of specific provision in the judgment to the contrary, and this rule applies where the convictions were in different courts.

   Walker, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Northern District of Georgia; William T. Neuman, Judge.

Habeas corpus by John Grant Lyman against Fred G. Zerbst, Warden of the United States Penitentiary, Atlanta, Ga. From a judgment awarding the writ defendant appeals. Affirmed.

See, also, 247 Fed. 611.

Hooper Alexander, U. S. Atty., and J. W. Henley, Asst. U. S. Atty., both of Atlanta, Ga., for appellant.

W. Carroll Latimer, of Atlanta, Ga., for appellee.

Before WALKER and BATTS, Circuit Judges, and SHEPPARD, District Judge.

BATTS, Circuit Judge. Pending an appeal from a judgment of conviction in the Southern District of California, Lyman, appellee, was convicted of another crime in the Southern district of New York, and committed to the United States penitentiary at Atlanta. The judgment of the California court was affirmed (Lyman v. United States, 241 Fed. 945, 154 C. C. A. 581), and a commitment was issued, reciting the conviction of Lyman; that he had been ordered to be imprisoned in the state penitentiary at San Quentin, Cal.; that the judgment was affirmed; that the Attorney General had designated the penitentiary at Atlanta as the place of confinement of defendant, and directing the marshal to deliver Lyman into the custody of the warden of the Atlanta penitentiary forthwith, and the warden to detain him for a period of one year and three months, "in accordance with the judgment and order." The marshal transmitted this commitment to the warden with a letter, to the effect that "I am inclosing you official commitment for John Grant Lyman, to become effective upon completion of his present term." The letter contained a receipt for the prisoner, which was signed by the warden and returned to the marshal. At the time the commitment was received Lyman was serving the New York sentence. Upon the expiration of the 15 months, dating from the day of the receipt of the commitment, Lyman sued out a writ of habeas corpus. The New York sentence had in the meantime

expired, but 1 year and three months had not thereafter elapsed. The District Judge held that the sentences ran concurrently, and that the applicant was entitled to his release.

[1] After the receipt of the California commitment, the warden, already in custody of the prisoner, held him under both commitments. The time of the sentence having elapsed between the receipt of the commitment and the date of the application for the writ of habeas corpus, the only conclusion to be reached by the trial court was that the applicant had served the term. The marshal, in sending the commitment, had stated that "the punishment was to become effective upon completion of his present term." There is nothing in the commitment which indicates a time for the beginning of the punishment, other than that the marshal was to forthwith deliver Lyman into the custody of the warden at Atlanta. This commitment was the measure of the authority of the warden, and was properly the basis of the action of the District Judge upon the application for habeas corpus. The marshal had no authority to change the terms of the commitment, or determine when the punishment should begin.

It is argued that it was manifest that the California court intended that the punishment should begin after the expiration of the term imposed by the New York court. This nowhere appears. It is true that, if the original order of imprisonment in the state penitentiary at San Quentin had not been changed, the imprisonment could not have begun until the prisoner had been released from the Atlanta penitentiary. But there is nothing to indicate that the court intended to do anything other than that which was done.

[2] It could well be assumed that the court intended, if it can be assumed that it had knowledge of the pendency of another sentence, that the ordinary effect should follow. Ordinarily, two or more sentences run concurrently, in the absence of specific provisions in the judgment to the contrary. United States v. Patterson (C. C.) 29 Fed. 775; In re Breton, 93 Me. 39, 44 Atl. 125, 74 Am. St. Rep. 335; 1 Bishop, Crim. Procedure, 1327, 1310. This rule seems to apply where the conviction is had in different courts. Ex parte Green, 86 Cal. 427, 25 Pac. 21; Ex parte Black, 162 N. C. 457, 78 S. E. 273; Ex parte Gafford, 25 Nev. 101, 57 Pac. 484, 83 Am. St. Rep. 568. The case cited by appellant of Hightower v. Hollis, 121 Ga. 160, 48 S. E. 969, if not distinguishable by reason of the nature of the punishment, is apparently in conflict with the weight of authority.

It is suggested that if the Attorney General had not designated the Atlanta penitentiary as the place of confinement, and the District Court for the Southern District of California had caused a commitment to issue upon the original order, the appellee would have been compelled to serve both sentences fully. If the commitment had been different, and the facts different, doubtless a different conclusion would be reached. That which the court is called upon to do is to pass upon the record as it stands. The California court either knew that Lyman was in the custody of the warden of the Atlanta penitentiary, or did not know of that fact. If it had knowledge of the fact, the commitment which it caused to be issued would evidence an intention that

the sentences should run concurrently. If it had no knowledge of that fact, there could have been no intention other than that its sentence should begin forthwith, as directed by the commitment.

The appellant suggests that error was committed in not permitting the California court to amend its judgment. The record contains nothing to indicate that the trial court had any desire to make any amendment, or that it in any sense recognized or assumed that any error had been committed.

The applicant has not, as suggested by the appellant, escaped punishment because of the technical error. There is nothing to indicate that an error has been committed, and the record shows that the prisoner was held under the sentence for the period designated by the judgment.

The judgment of the lower court is affirmed.

WALKER, Circuit Judge (dissenting). It is quite apparent that the above-mentioned commitment order made by the District Court for the Southern District of California was not intended to change in any respect its previously rendered and affirmed judgment. In specifying the place of imprisonment, there was a compliance with the direction of the Attorney General. The extent of the authority conferred on the Attorney General by the statute under which he acted (10 U. S. Comp. St. Ann. § 10547) is to have the place of imprisonment changed. He is not empowered to make the period of imprisonment different from what it would have been if the place of imprisonment designated in the judgment of the court had remained unchanged. His exercise of the power conferred is not to be given the effect of accomplishing an unauthorized result. There is nothing to indicate that the above-mentioned letter of the Attorney General, or the commitment order made in pursuance of it, purported or was intended to have the effect given to it by the order appealed from. If the change of the place of confinement of the convict had not been so made, his confinement in the San Quentin penitentiary could not have commenced until he was released from confinement in the Atlanta penitentiary under the New York conviction.

Under the facts of the instant case, there is nothing upon which to base the conclusion that the sentence on the conviction in California was imposed under such circumstances as to make it run concurrently with any other sentence. So far as appears, at the time that sentence was imposed, the convict was not the subject of any other sentence, imposed by that or any other court. As above stated, the commitment order made by the California trial court does not purport to make any change in its judgment rendered at a previous term and thereafter affirmed. To give that order, the writ issued under it, and the written statement made by the warden on his receipt of the commitment writ, the effect of making the period of the convict's confinement shorter than it would have been if the place of confinement had not been changed, would amount to making a change in the effect and operation of the affirmed judgment which was not authorized, and which does not appear to have been intended by either the Attorney

General or the court making the order of commitment. It was not in the power of the warden to make an authorized change in the place of imprisonment have the further effect of shortening the period of imprisonment.

Under the circumstances of the issue of the California commitment writ and the receipt of it by the warden, the latter was thereby authorized, upon the expiration of the period of the convict's imprisonment under the New York sentence, to retain him in custody for the period required by the California sentence. The marshal did not execute the writ by arresting Lyman and delivering him to the warden. The convict was already in the warden's custody, held under another unexpired sentence. In the opinion of the writer, what was done did not have the effect of making the convict's confinement in the Atlanta penitentiary under the California sentence commence sooner than it could have commenced if the place of his confinement had not been changed. The application of the conclusion just stated to the facts disclosed leads to the further conclusion that when the writ of habeas corpus was issued, and when the order appealed from was made, the appellee was not entitled to be discharged from custody, because the period of his imprisonment under the California sentence had not expired; and that the court erred in ordering his discharge.